UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEALTHCALL OF DETROIT, INC.,

       Plaintiff,                          No. 05-cv-74434

v.                                      Honorable Judge R. Steven Whalen

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.
                                      /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** [Docket #33]

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's Motion For Partial Summary Judgment [Docket #33] filed June 30, 2007. For the reasons set forth below, Defendant's motion is DENIED WITHOUT PREJUDICE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2005, Plaintiff Healthcall of Detroit, Inc. ("Healthcall"), a provider of medical, therapeutic, and rehabilitative services, filed suit in Wayne County Circuit Court alleging that Defendant State Farm Mutual Automobile Insurance Company ("State Farm") breached its contractual and/or statutory obligations to pay for nursing and attendant care services for Vincent Ross pursuant to M.C.L. 500.3107. *Docket #1* at Exhibit A.

The complaint alleges as follows. On December 25, 1989, Vincent Ross, a minor, sustained serious injuries in a motor vehicle accident. *Id.*, Exhibit A at ¶7. Pursuant to

M.C.L. 500.3107, Ross was entitled to receive "No-Fault" benefits including expenses relating to his "care, recovery, or rehabilitation for conditions arising out of the automobile accident." *Id.* at ¶8. HealthCall, Ross' care provider for the past 17 years, claims that although it provided the above services to Ross and submitted bills, along with "reasonable proof" of the expenses, for the 2004-2005 school year, Defendant has failed to pay. *Id.* at ¶12. Plaintiff requests contractual damages along with attorneys' fees.

On November 21, 2005, Defendant removed the matter to this Court. On April 3, 2006, the Honorable Robert H. Cleland referred the case to Magistrate Judge Wallace Capel Jr., for consent jurisdiction pursuant to 28 U.S.C. 636(c) and Fed. R. Civ. P. 73. *Docket #6*. On November 21, 2006, the case was reassigned to this Court. *Docket #21*.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS

Defendant disputes the charges in question, offering multiple reasons that it should not be required to pay HealthCall. First, Defendant contends that HealthCall charged it for non-existent services, citing testimony and records by staff at Ross' school as well as a private investigator's report contradicting treatment logs by HealthCall home health aides ("HHAs"). *Docket #33*, 2-9. Second, Defendant argues that it has been improperly billed for the services of a Licensed Practical Nurse ("LPN"), alleging that it should not be obliged to pay for services that could and should have been performed by HHAs and/or staff members at Ross' public school. *Id.* at 9-13. Third, Defendant contends that Plaintiff's demand for hourly rates of $27 for HHA services and $165 per LPN visit is unreasonable as a matter of law. *Docket #13* at 21. Defendant, arguing HealthCall submitted bills for non-existent, superfluous, and unreasonably priced services long before the 2004-2005 school year in dispute, also asks for a set-off for invoices regarding previous school years as well as attorney's fees. *Id.* at 22-24.

### A. Applicable Law

In the case of motor vehicle injury, M.C.L. 500.3157 entitles physicians and other medical caregivers of the injured party to "charge a reasonable amount for the products, services and accommodations rendered . . . . not exceed[ing] the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance." The statute requires that "(1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable." *Moghis v. Citizens Ins. Co. of America*, 187 Mich.App. 245, 247, 466 N.W.2d 290, 292 (Mich.App.1990).

The statute's "'customary charge' and 'reasonableness' language . . . constitute[] separate and distinct limitations on the amount providers may charge with respect to auto accident victims covered by no-fault insurance." *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 320 (6th Cir. 1999)(*citing Hofmann v. Auto Club Ins. Ass'n,* 211 Mich.App. 55, 107, 535 N.W.2d 529, 554 (1995). In determining "customary" charges, "the relevant inquiry under § 3157 is not the amount that is customarily charged to other health insurers, but rather the amount that is customarily charged in cases not involving insurance." *Hofmann,* 211 Mich.App. at 107, 535 N.W.2d at 554. "[A] no-fault carrier is liable only for those medical expenses that constitute a reasonable charge for the product or service." *Munson Medical Center v. Auto Club Ins. Ass'n,* 218 Mich.App. 375, 384, 554 N.W.2d 49, 53-54 (Mich.App.,1996). However, §500.3137 "leave[s] open the

questions of what a 'reasonable charge' is, who decides what is 'reasonable, and what criteria may be used to determine what is 'reasonable.'"*Advocacy Organization for Patients and Providers, supra* 176 F.3d at 320.[1]

### B. Services Incurred

Defendant states that HealthCall-employed HHAs consisting of Vincent Ross' foster mother, Vannie Greer, foster sister, Lakeshia Greer, and foster aunt, Voncile Bowman, have "consistently billed Defendant for twenty-four hour a day aide care." *Docket #33* at 1. However, Defendant alleges that deposition testimony of Ross' special education instructor for the 2004-2005 school year, James Graham, stands at odds with family members' claims of 24/7 care. *Id.* at 2-3, Exhibit 2 at 24. Defendant also cites 10 separate Detroit Public School documents that it contends demonstrate that the HHAs were unavailable during Ross' school hours. *Id*. at 4-8, Exhibits 3, 4A-F, 5-13. Defendant alleges that HealthCall's own records show inconsistencies between the HHAs' claims and those of former HealthCall employee Licensed Practical Nurse ("LPN") Patricia Moore's time sheets. *Id.* at 6-8. Finally, Defendant argues that January 29, 2004 surveillance of Ross' residence "places Lakeshia Greer's vehicle away from the residence" for at least two of the hours for which she claims to have been caring for Ross. *Id.* at 8-9.

---

[1]*Advocacy Organization for Patients and Providers*, 176 F.3d at 320, *citing Munson Med. Ctr. v. Auto Club Ins. Assoc.,* 218 Mich.App. at 390, 56, notes that "[i]n 1992 and 1994 referenda and amendments were proposed which would have answered these questions by adding fee schedules to the no-fault act, but the proposals were not successful."

### 1. Deposition of James Graham

Defendant cites James Graham's deposition testimony indicating that he did not observe any of Ross' family members/HHAs assisting him during the course of the 2004/2005 school year. *Docket #33*, Exhibit 2, at pgs. 11, 14, 24. Plaintiff in turn cites Graham's acknowledgment that he could not guarantee that Ross' HHAs were elsewhere on campus during the year in question. *Id.* Exhibit 2 at pg. 36. Graham's statement that he did not observe HHAs assisting Ross during the 2004/2005 school is countered by LPN Patricia Moore's testimony that the HHAs were regularly present at school. *Docket #47*, Exhibit B at pg. 24. Defendant's reply attempts to discount this testimony by arguing that Moore acknowledged that her testimony was speculative. *Docket #51* at 4. However, this amounts to a distortion of Moore's statement. In fact, Moore did not speculate as to *whether* she ever saw the HHAs at school but rather *how often* she saw the HHAs:

> Question: "Okay. So again, this will be speculation, in the last three years that you cared for Vincent, how many times did you see Vonnie or Lakeshia or Ms. Bowman at school?"
> Moore: "Speculation, gosh. It was quite often, but it wasn't - I would say at least once a day."

*Docket #47,* Exhibit B at pg. 24. Because a question of fact - a credibility determination - remains as to whether the HHAs were present during the relevant time frame, summary judgment is inappropriate.

### 2. Detroit Public School Documents

Likewise, the school documents cited by Defendant fail to establish the absence of a genuine issue of material fact. While Defendant cites school nurse Gretchen Barrow's January 31, 2005 notes indicating that she called Ross' foster mother, Vannie Greer, to demonstrate that Vannie Greer was not on campus, Plaintiff states that in fact Lakeshia, rather than Vannie Greer, was assigned to work at the school that day. *Docket #33*, Exhibit 3; *Docket #47*, Exhibit Q. Plaintiff also points out that the fact that the school nurse called Vannie to request that she bring a change of clothes to school does not support the conclusion that Lakeshia was not at school. *Docket #47* at 14. Similarly, Plaintiff contends that school records indicating that Vannie Greer was not present on October 5, 2004, September 9, 2004, or June 22, 2004 does not, by itself establish that Ross was unattended since again, time sheets show that Lakeshia rather than Vannie was scheduled for work on those days. *Docket #47*, Exhibits R-T.

Defendant cites additional school records created on February 14, 2004, May 18, 2004, January 23, 1996, May 16, 2001, June 10, 1999, and June, 2000 which either omit mention of Vannie Greer or suggest that she was not on campus. *Docket #33* at 4-6. Again, while these records allow for the possibility that *Vannie Greer* was offsite on a number of school days, they fail to establish that Ross was unattended by other HHAs. Defendant cannot establish as a matter of law that it is entitled either to judgment based on the unpaid billings or a set-off for payments made in prior years.

### 3. HHA Billing Inconsistencies with HealthCall's Records

Defendant contends further that HealthCall's own records demonstrate billing improprieties, noting discrepancies between the records of the HHAs and LPN Patricia Moore. *Docket #33* at 6-8. Defendant premises this argument on the fact that Lakeshia Greer's statement that Plaintiff did not attend school on March 10, 2005 or April 13-15, 2005 stands at odds with LPN Patricia Moore's treating notes indicating that she catheterized Ross three times before returning him "to class." *Docket #33* at 8; Exhibit 5 at pg. 2, Exhibit 8. Defendant argues that Lakeshia Greer's statement is belied by Detroit Public School absentee records showing that Ross was not absent on those days. *Id.*, Exhibit 7. However, Lakeshia Greer's claim that Ross did not attend school is confirmed by a Detroit Public School calendar showing that school was out of session on all of those dates.[2] *Docket #47*, Exhibit W. Moreover, LPN Patricia Moore has conceded that she "cut and pasted" her notes for these days from her other treating records. *Id.* at Exhibit X. While this admission suggests that she was somewhat errant in failing to submit accurate billing notes, it does not establish that Defendant was improperly billed.

4. **Surveillance of Ross' Residence**

Defendant submits further that January 29, 2004 surveillance conducted on Ross' residence "places Lakeshia Greer's vehicle away from the residence, with Vincent Ross inside the home, for at least two . . . hours in which Lakeshia Greer indicated she was

---

[2] Defendant, apparently conceding in its reply that school was in fact out of session on April 13-15, 2005, argues that only a handwritten note on the school calender supports Plaintiff's contention that school was out of session on March 10, 2005. *Docket #51* at FN6; *Id.* at Exhibit 4.

-8-

providing care . . ." *Docket #33* at 8; *Id*., Exhibit 15 at 7-8. Plaintiff counters that the observation of a car registered to Lakeshia Greer departing the residence fails to support an inference of fraud. Further, and more significantly, time sheets submitted by Voncile Bowman for January 29, 2004 indicate that she, not Lakeshia Greer, was assigned to care for Ross for the hours in question. *Docket #47*, Exhibit P. Although in reply, Defendant attempts to discredit Voncile Bowman's time sheet entries by citing her deposition testimony that she cared for Ross at school on a sporadic basis only, that discrepancy, by itself, does not establish that Defendant was routinely billed for non-existent services. *Docket #51* at 5; *Id.* at Exhibit 2.

### C. Unnecessary/Duplicative Services

Defendant argues next that Plaintiff's charges include unnecessary/duplicative services, contending that "the service of an LPN is unneccessary and unreasonable for Mr. Ross' care." *Docket #33* at 9. Defendant states:

> "Despite both the HHA's and LPN's ability to catheterize and monitor Mr. Ross' condition, HealthCall of Detroit continued to bill Defendant for the services of *both* an HHA and LPN. The effect of this duplicative billing practice was an invoice for $192.00 ($165 LPN *per visit* + *$27 HHA per hour*) three times a day for the period in which the LPN performed services for Mr. Ross. The practice is made even more egregious given the availability of a more qualified individual (Nurse Barrow, R.N.), capable and provided at no cost by the Detroit Public Schools."

*Docket #33* at 11 (emphasis in original). Defendant argues that the LPN's redundancy is underscored by Vannie Greer's acknowledgment that "she could not recall the last time the

LPN picked up a symptom or condition in Mr. Ross that Ms. Greer did not." *Id.* at 10.

In response, Plaintiff cites doctors' scripts from years the 2005-2007 which state that Ross required medical monitoring by an RN or LPN multiple times each day, disputing Defendant's claim that the HHAs alone are capable of meeting Ross' medical needs. *Docket #47*, Exhibit K. Defendant's contention that it should not be required to pay for services that can be administered Detroit Public School personnel is further undermined by Gretchen Barrow's testimony that as a public school nurse, she provided care services to Ross only when HealthCall's HHAs or the LPN were unavailable. *Docket #47* at 17-18; *Docket #33*, Exhibit 19 at pg. 8. Moreover, Barrow's testimony at the very least suggests that Ross' medical needs were more effectively served by medical personnel hired to treat him on a regular basis than by herself:

> "I know with Vincent, he's rather sensitive in certain areas. And the family and the nurses that were with him, they were close to him so they knew what to look for. Whereas I hadn't received full information of what to look for, for Vincent. So I'm aware of the dysreflexia and how to treat it, but I didn't know the specifics gathered for Vincent."

*Id.*, Exhibit 19 at pg. 20. Barrow's testimony also stands at odds with James Graham's statement that Ross had his own paraprofessional assigned to him on a one-to-one basis, testifying instead that "the thing was, we had several students that required care. So, I don't believe - I really - I'm not sure that Vincent was a one-on-one." *Docket #33*, Exhibit 2 at pg. 22; *Id.*, Exhibit 19 at pg.18. Again, in light of ample evidence creating questions of material fact, summary judgment is inappropriate.

### D. Unreasonable Charges

Defendant argues further that Plaintiff cannot prove that its charges were reasonable pursuant to M.C.L. §500.3107, contending that the charge of $165 per LPN visit and a rate of $27 per hour for HHA services is unreasonable as a matter of law. *Docket #33* at 13-22 (*citing Nasser v. Auto Club Ins. Ass'n,* 435 Mich. 33, 49, 457 N.W.2d 637, 645 (Mich.1990). Defendant also contends that summary judgment is appropriate based on HealthCall's Fed. R. Civ. P. 30(b)(6) witness' acknowledgment that Plaintiff set its rates based in part on the "payor source." *Docket #33* at 18; *Id*., Exhibit 20 at pgs. 30-31. Finally, Defendant submits the results of market surveys to support its argument that Plaintiff's charges are unreasonable. *Id.* at 20-22.

At present, summary judgment would be premature as to whether Plaintiff's charges were unreasonable. First, although Defendant cites *Advocacy Organization for Patients and Providers, et al. v. Auto Club Insurance Association, et al.*, 257 Mich App. 365; 670 N.W. 2d 569 (2003) for the proposition that summary judgment is appropriate on the issue of reasonableness, *Advocacy* is only partially applicable here. In contrast to the present case, the *Advocacy* court in large part upheld a trial court finding that "customary" charges were not necessarily "reasonable" charges. *Id.* at 371, 574. Moreover, in harmony with this Court's present holding, *Advocacy* (*citing Nasser, supra,* 435 Mich. at 55, 457 N.W.2d at 647) found that "'the question whether expenses are reasonable and reasonably necessary is generally *one of fact for the jury*.'" *Advocacy,* at 380, 578 (emphasis added).

Second, although Defendant has included market surveys with this motion and its supplemental brief (see *Docket #55*) in support of its claim that Plaintiff's charges were unreasonable, this Court has scheduled a *Daubert* hearing for April 16, 2008 regarding parties' expert witnesses regarding the reasonableness of fees.[3] Until the *Daubert* issue is resolved, I decline to consider any of the market surveys in conjunction with this summary judgment motion. Thus, the issue of whether Plaintiff's charges were unreasonable (and whether Defendant is entitled to a set-off for past payments) is premature.

## IV.  CONCLUSION

For these reasons, Defendant's Motion for Partial Summary Judgment [Docket #33], as well as its request for attorney fees, is DENIED WITHOUT PREJUDICE.

SO ORDERED.

---

[3]*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 580, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

S/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: March 28, 2008


                              CERTIFICATE OF SERVICE


The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on March 28, 2008.



                                        S/Gina Wilson
                                        Judicial Assistant