# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HEALTHCALL OF DETROIT, INC.,

    Plaintiff,                                    No. 05-cv-74434

v.                                          Honorable Judge R. Steven Whalen

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

_____/

# OPINION AND ORDER

Before the Court is Plaintiff's *Motion for Summary Judgment*, [Docket #52] filed on October 31, 2007, and Defendant's *Motion for Reconsideration Regarding LPN Charges* [Docket #73]. For the reasons set forth below, both motions are DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2005, Plaintiff Healthcall of Detroit, Inc. ("Healthcall") a provider of medical, therapeutic, and rehabilitative services, filed suit in Wayne County Circuit Court alleging that Defendant, State Farm Mutual Automobile Insurance Company ("State Farm") breached its contractual and/or statutory obligations to pay for nursing and attendant care services for Vincent Ross pursuant to M.C.L. 500.3107. *Docket #1* at Exhibit A.

The complaint alleges as follows. On December 25, 1989, Vincent Ross, a minor, sustained serious injuries in a motor vehicle accident. *Id.*, Exhibit A at ¶7. Ross was entitled to receive "No-Fault" benefits pursuant to M.C.L. 500.3107, including expenses relating to his "care, recovery, or rehabilitation for conditions arising out of the automobile accident." *Id.* at ¶8. Plaintiff HealthCall, Ross' care provider for the past 17 years, claims that although it provided the above services to Ross and submitted bills, along with "reasonable proof" of the expenses for the 2004-2005 school year, Defendant has failed to pay. *Id.* at ¶12. Plaintiff requests contractual damages along with attorneys' fees.

On November 21, 2005, Defendant removed the matter to this Court. On April 3, 2006, the Honorable Robert H. Cleland referred the case to Magistrate Judge Wallace Capel Jr., for consent jurisdiction pursuant to 28 U.S.C. 636(c) and Fed. R. Civ. P. 73. *Docket #6*. On November 21, 2006, the case was reassigned to this Court. *Docket #21.*

On October 31, 2007, Plaintiff filed the instant motion for summary judgment [Docket #52]. On January 12, 2008, Plaintiff filed *Motion in Limine to Strike the Purported "Market Survey" by Kathleen Wallace and to Strike Kathleen Wallace as an "Expert" Witness* [Docket #58]. On March 28, 2008, the Court denied Defendant's June 30, 2007 partial motion for summary judgment [Docket #33], finding a question of fact remained as to 1) whether Defendant was billed for *non-existent* services 2) whether it was billed for *duplicative or unnecessary* services and 3) whether Plaintiff's fees were reasonable. *Docket #67.* In finding that the reasonableness of Plaintiff's Licenced Practical Nurse ("LPN") fees were a question of fact for the jury, the Court also noted that because it had not ruled on the

motion in limine regarding Kathleen Wallace's market surveys, the issue of fee reasonableness was not "ripe" for adjudication. *Docket #67* at 12. On April 17, 2008, the Court denied the motion in limine without prejudice. *Docket #71.* On that basis, Defendant filed *Motion for Reconsideration of the LPN Charges* on April 21, 2008, arguing that Plaintiff's charges of $165.00 per LPN visit was unreasonable as a matter of law. *Docket #73*.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

Plaintiff notes that as a general matter, Vincent Ross is entitled to its medical care services pursuant to M.C.L. 500.3107. *Plaintiff's Brief, Docket #52* at 13. Plaintiff contends that Defendant's withholding of benefits creates "'a rebuttable presumption of unreasonable refusal or undue delay.'" *Id.* (*citing Combs v. Commercial Carriers, Inc.*, 117 Mich. App. 67, 73, 323 N.W.2d 596, 598 (Mich. App. 1982)). Plaintiff contends that because Defendant cannot rebut this presumption by showing a failure to file timely claims or provide reasonable proof of loss, summary judgment is appropriate. *Id.* (*citing Johnston v. Detroit Automobile Inter-Ins Exch,* 124 Mich. App. 212, 216, 333 N.W.2d 517, 518 (Mich. App. 1983)).

Defendant in turn characterizes the present motion as merely a "sur-reply" to its own motion for summary judgment. *Defendant's Brief, Docket #53* at 1(*citing Docket #47*). To be sure, Plaintiff's present motion relies principally on the same arguments and factual predicate found in its opposition to Defendant's summary judgment motion. However, in contrast here, the Court considers whether the same evidence further entitles *Plaintiff* to summary judgment. Finally, Defendant resubmits its argument that the LPN rate of $165.00 per visit charged by Plaintiff is unreasonable as a matter of law. *Docket #73.*

**A. Applicable Law**

In the case of motor vehicle injury, M.C.L. 500.3157 entitles physicians and other medical caregivers of the injured party to "charge a reasonable amount for the products, services and accommodations rendered . . . . not exceed[ing] the amount the person or institution customarily charges for like products, services and accommodations in cases not

involving insurance." The statute requires that "(1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable." *Moghis v. Citizens Ins. Co. of America*, 187 Mich.App. 245, 247, 466 N.W.2d 290, 292 (Mich.App.1990).

The statute's "'customary charge' and 'reasonableness' language . . . constitute[] separate and distinct limitations on the amount providers may charge with respect to auto accident victims covered by no-fault insurance." *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 320 (6th Cir. 1999)(*citing Hofmann v. Auto Club Ins. Ass'n,* 211 Mich.App. 55, 107, 535 N.W.2d 529, 554 (Mich.App.1995). In determining "customary" charges, "the relevant inquiry under § 3157 is not the amount that is customarily charged to other health insurers, but rather the amount that is customarily charged in cases not involving insurance." *Hofmann,* 211 Mich.App. at 107, 535 N.W.2d at 554. "[A] no-fault carrier is liable only for those medical expenses that constitute a reasonable charge for the product or service." *Munson Medical Center v. Auto Club Ins. Ass'n,* 218 Mich.App. 375, 384, 554 N.W.2d 49, 53-54 (Mich.App.,1996). However, §500.3137 "leave[s] open the questions of what a 'reasonable charge' is, who decides what is 'reasonable, and what criteria may be used to determine what is 'reasonable,'" noting that "[i]n 1992 and 1994 referenda and amendments were proposed which would have answered these questions by adding fee schedules to the no-fault act, but the proposals were not successful." *Advocacy Organization for Patients and Providers, supra* 176 F.3d at 320

(*citing Munson Med. Ctr. v. Auto Club Ins. Assoc.,* 218 Mich.App. at 390, 56)

### B. Whether the Services Billed Were Incurred

Citing *Cruz v. State Farm Mut. Auto. Ins. Co.,* 466 Mich. 588, 608, 648 N.W.2d 591, 601 (2002), Plaintiff argues first that "'an insurer can refuse to pay benefits with impunity only if the insured fails to file a timely claim and provide reasonable proof of loss." *Plaintiff's Brief* at 13. Plaintiff asserts that it can prove beyond factual dispute that the bills were "incurred," noting that their timely submission of the bills to Defendant created a rebuttable presumption of "unreasonable refusal." *Combs v. Commercial Carriers, Inc.,* 117 Mich.App. 67, 73, 323 N.W.2d 596, 598 (Mich.App.1982). Plaintiff, arguing that the bills were timely submitted and constitute proof of services rendered, contends as a matter of law that Defendant cannot show that its refusal to pay was not unreasonable. *Plaintiff's Brief* at 1.

As an initial matter, I disagree that Plaintiff can show presently that there is no question of material fact as to whether the charges in dispute were incurred. The services in question cannot found to have been "incurred," merely by the submission of claims to Defendant. *Proudfoot v. State Farm Mut. Ins. Co.* 469, Mich. 476, 484, 673 N.W.2d 739, 743 (2003)(*citing Manley v. Detroit Auto. Inter-Insurance Exchange,* 425 Mich. 140, 157, 388 N.W.2d 216, 223 (1986)). The finding that "'a no-fault insurer'" is not "oblige[d] to pay for an expense until it is actually incurred,'" uses the word "incurred," (as construed by this Court) as synonymous with "performed" rather than simply "billed for."). *Id.* The key issue is not whether Plaintiff submitted the bills in dispute, but whether Defendant was

charged for non-existent services.[1]

Although Plaintiff contends that Defendant cannot overcome its burden to prove that the billings were unreasonable, in fact, evidence supports the conclusion that a portion of the services at issue were *not* incurred. While Defendant may presently be unable to show that it is entitled to judgment as a matter of law, evidence nonetheless amply creates a question of material fact sufficient to survive the Plaintiff's motion. Ross' special education instructor stated that he did not observe any HealthCall home health aides ("HHAs") attending Plaintiff over the course of the 2004/2005 school, despite the fact that Defendant was billed for such services. *Docket #53*, Exhibit 2 at 11, 14. Detroit Public School records indicating that HHAs hired to tend Ross were off-site or unavailable, cross-referenced with Plaintiff's time sheets showing that Ross received 24-hour care from the HHAs, support Defendant's contention that it was charged for unperformed services. *Id.,* Exhibits 3, 4A-F. Defendant also notes that a January 29, 2004 surveillance of Ross' residence shows discrepancies between Plaintiff's billing records and the investigators' observations. *Docket #53*, Exhibits 15, 16. Because this evidence stands at odds with Plaintiff's contention that all services billed were "incurred," judgment as a matter of law is inappropriate.

**C. Whether the Services Billed Were Necessary**

Likewise, Plaintiff cannot establish as a matter of law that the services provided to Ross were "reasonably necessary for his care, recovery, or rehabilitation." *Plaintiff's Brief*

---

[1]Of course, Defendant would be subject to penalty interest if found to be withholding benefits for which it were liable. M.C.L. 500.3142(3).

at 18. Defendant disputes that Ross requires the services of a Licensed Practical Nurse ("LPN"), arguing that all of the services performed by the LPN employed by HealthCall could be performed by the HHA. *Defendant's Brief* at 10-14, *Docket #53*, Exhibit 17 at 33, 56. Defendant also notes that despite the fact that a nurse employed by Detroit Public Schools now regularly catheterizes Ross (and was apparently permitted to perform other practical nurse function's on Ross' behalf ), HealthCall nonetheless billed it for the apparently simultaneously performed services of an LPN ($165.00 per visit) and an HHA ($27.00 per hour). *Id.* at 12, *Docket # 53*, *Exhibit 18* at 9, 15. Given evidence that the school nurse, an LPN, and HHA's were all capable of catheterizing Ross, monitoring his blood pressure, and performing other routine medical needs, a question of fact remains as to whether the services of both an LPN and HHAs was "reasonably necessary" under M.C.L. §500.3107(1)(a).[2]

### D. Whether the Plaintiff's Charges are Reasonable

### 1. Plaintiff's Motion for Summary Judgment [Docket #52]

Finally, Plaintiff argues that it charged Defendant a reasonable HHA and LPN rate, disputing Defendant's contention that its rates were either exorbitant or impermissibly based on the identity of the reimbursing insurance company. *Plaintiff's Brief* at 22-25. Plaintiff argues that Defendant conducted a "flawed analysis," noting that the $125.00 cited by

---

[2]Plaintiff cites prescriptions written by Ross' treating physicians to underscore the need for continual LPN care. *Docket #52*, Exhibit K. However, a question remains at least as to whether the services of an LPN were necessary given the presence of a school nurse capable of performing the prescribed functions.

another health provider for an LPN visit (Plaintiff's rate is $165.00) "are actually higher for comparable services," failing however to provide detailed support for this conclusion. *Plaintiff's Brief* at 24, Exhibit J at 152. Plaintiff also contends that its HHA rate of $27 per hour is reasonable, considering that Ross required "high tech" HHA care and the fact that various insurance companies regularly pay up to $28 per hour for HHA services. *Id.* at 23-24, Exhibit J. On the other hand, Defendant notes that its expert, Kathleen Wallace "was unable to find any HHA or LPN service provider whose rates approached the level of Plaintiff's," finding otherwise a maximum of $125 per LPN visit and a $18.00 to $23.00 hourly rate for HHAs. *Defendant's Brief,* Docket #53 at Exhibit 21. While Plaintiff has presented evidence showing that a variety of insurance companies regularly paid LPN and HHA fees in the range of those billed to Defendant, it has not established beyond factual dispute that they were reasonable. *Docket #52*, Exhibit J.

2. **Defendant's Motion for Reconsideration Regarding LPN Charges [Docket #73][3]**

Defendant, noting that the Court's Amended Scheduling Order [Docket #72]

---

[3]As discussed above, the Court's scheduling order stated explicitly that Defendant could file a motion for reconsideration of its summary judgment motion. *Docket #72* at ¶2.

permitted it to file a motion for reconsideration of the "outstanding issue of LPN rates," contends that Plaintiff's $165.00 per visit charge for LPN care is "neither reasonable nor customary" as required by M.C.L. 500.3157. *Defendant's Brief* at 2.

Defendant cites Plaintiff's own market analysis showing that it regularly charges $52.00 per hour of LPN care - less than one third of the $165.00 per LPN visit it charged to Defendant. *Defendant's Brief* at 4; Exhibit 1 at 10-11. Plaintiff in turn, argues that Defendant is in effect comparing apples and oranges, noting that its conceded $52.00 rate refers to a per *hour* rather than per *visit* rate. *Plaintiff's Brief, Docket #74* at 7. Plaintiff cites Kathleen Wallace's deposition testimony which distinguishes between the per hour and per visit LPN rates, noting that her survey found per visit rates billed up to the rate of $125.00. Plaintiff further notes that Wallace conceded that an LPN would typically charge a per visit rate even if making separate, multiple visits to the same patient within the course of one day. *Plaintiff's Brief* at 3, *Docket #74*, *Exhibit B* at 32.

Plaintiff also disputes that its per visit LPN rates fluctuated depending the identity of the reimbursing insurance company, citing the testimony of Joel Szirtes, Director of Operations for HealthCall, that Plaintiff charged an across the board rate of $165 "if a physician is ordering skilled nurse visits." *Id.* at 4, Exhibit C at 8, 56. Plaintiff also contends that a "Skilled Nurse Visit Market Survey" shows an average per visit charge between $158.23 and $166.83. *Id* at 11, Exhibit D.

In previously denying Defendant's motion for partial summary judgment, this Court

noted that "'the question of whether expenses are reasonable and reasonably necessary is generally one of fact for the jury.'" Docket #67 at 12 (*citing Advocacy Organization for Patients and Providers, et al. v. Auto Club Insurance Association, et al.*, 257 Mich App. 365, 380, 670 N.W. 2d 569, 578 (Mich App. 2003); *Nasser v. Auto Club Ins. Ass'n,* 435 Mich. 33, 49, 457 N.W.2d 637, 647 (Mich.1990)). Since then, both sides have supplemented and refined their respective arguments for and against a finding of reasonableness as a matter of law. Nonetheless, Defendant cannot demonstrate a "palpable defect by which the court and the parties have been misled," much less "that correcting the [argued] defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). In light of genuinely conflicting evidence supporting both parties' arguments, both Plaintiff's motion for summary judgment and Defendant's motion for reconsideration must be denied.

## IV. CONCLUSION

For these reasons Plaintiff's *Motion for Summary Judgment* [Docket #52] is DENIED and Defendant's *Motion for Reconsideration Regarding LPN Charges* [Docket #73] is DENIED.

SO ORDERED.


S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 3, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 3, 2008.

S/Gina Wilson
Judicial Assistant
