UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEALTHCALL OF DETROIT, INC.,

                                     Case No. 05-74434

            Plaintiff,

                                     Honorable R. Steven Whalen
v.                                   United States Magistrate Judge

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

            Defendant.
_____/

**OPINION AND ORDER RE: ATTORNEY FEES AND INTEREST**

Before the Court are (1) Plaintiff's Post-Trial Motion for Penalty Interest, Attorney Fees, and Prejudgment Interest [Docket #133], (2) Defendant's Motion for Attorney Fees Pursuant to M.C.L. § 500.3148(2) [Docket #134], and (3) Plaintiff's Motion for Clearance or Determination of Prior Counsel's Lien [Docket #141]. All three motions will be GRANTED, with modifications as discussed below.

### I.    BACKGROUND

This is a diversity action brought under the Michigan No-Fault Insurance Act, M.C.L. § 500.3101, *et. seq.* Plaintiff HealthCall of Detroit, a provider of home health care services, sought payment from Defendant State Farm, the insurer, for allowable expenses it claimed to have provided to Vincent Ross, a severely disabled young man who as an infant was injured in an automobile accident. Following trial, a jury awarded Plaintiff

-1-

$1,066,159.97 in allowable expenses.  In addition, the jury found that all of the benefits claimed were thirty days or more past due, with the exception of six specific vouchers for "high-tech home health aide service."  As indicated on the verdict form, the jury also found that the six submitted claims were fraudulent in nature.[1]

## II.   PLAINTIFF'S MOTION RE: FEES AND INTEREST [DOCKET #133]

### A.   Penalty Interest

M.C.L. § 500.3142(2) provides that "[p]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."  Section 500.3142(3) provides that "[a]n overdue payment bears simple interest at the rate of 12% per annum."  This statutory interest "is awarded as a penalty for the insurer's misconduct and is not intended to compensate for damages."  *Regents of the University of Michigan v. State Farm Mutual Ins. Co.*, 250 Mich.App. 719, 734, 650 N.W.2d 129, 138 (2002).  "If there is a failure to pay benefits and it is later determined benefits are due, penalty interest must be assessed."  *Bach v. State Farm Mutual Insurance Co.*, 137 Mich.App. 128, 132, 357 N.W.2d 325, 326 (1984).

In Section II of the verdict form ("Penalty Interest"), the jury specifically found that $1,066,159.97 in benefits owed to HealthCall were 30 days or more past due.  Therefore, Plaintiff is entitled to statutory penalty interest (simple interest) of 12% on that amount.  Plaintiff has correctly calculated the penalty interest as $262,389.38 as of January 21,

---

[1] State Farm pled an affirmative defense of fraud.

2009. *See Plaintiff's Motion, Amended Exhibit O*. The overdue amount was paid to

Plaintiff's counsel two months later, on or about March 21, 2009.  The additional penalty

interest for that two-month period is $21,326.00, bringing the total penalty interest to

**$283,715.38.**

## B.    Attorney Fees

### 1.    Entitlement to Statutory Attorney Fees

M.C.L. § 500.3148(1) provides as follows regarding attorney fees:

> " Sec. 3148. (1) An attorney is entitled to a reasonable fee for advising and
> representing a claimant in an action for personal or property protection
> insurance benefits which are overdue. The attorney's fee shall be a charge
> against the insurer in addition to the benefits recovered, if the court finds that
> the insurer unreasonably refused to pay the claim or  unreasonably delayed
> in making proper payment."

In *Moore v. Secura Insurance*, 482 Mich. 507, 517, 759 N.W.2d 833 (2008), the

Court described the two requirements for attorney fees under the statute:

> "MCL 500.3148(1) establishes two prerequisites for the award of attorney
> fees. First, the benefits must be overdue, meaning 'not paid within 30 days
> after [the] insurer receives reasonable proof of the fact and of the amount of
> loss sustained.' MCL 500.3142(2). Second, in postjudgment proceedings,
> the trial court must find that the insurer 'unreasonably refused to pay the
> claim or unreasonably delayed in making proper payment.' MCL
> 500.3148(1). Therefore, assigning the words in MCL 500.3142 and MCL
> 500.3148 their common and ordinary meaning, 'attorney fees are payable
> only on overdue benefits for which the insurer has unreasonably refused to
> pay or unreasonably delayed in paying.' Proudfoot v. State Farm Mut. Ins.
> Co., 469 Mich. 476, 485, 673 N.W.2d 739 (2003) (emphasis omitted)."

In the present case, the jury explicitly found that the majority of claimed benefits, to

-3-

the tune of $1,066,159.97, were overdue.[2]  The first statutory prerequisite has therefore been satisfied.

As to reasonableness, *Moore* held that "[u]nder the plain language of the statute, the claimant shoulders the initial burden to supply reasonable proof of her entire claim, or reasonable proof for some portion thereof. " *Id.* at 523.  Upon making that showing, "an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay." *Ross v. Auto Club Group*, 481 Mich. 1, 11, 748 N.W.2d 552 (2008).  "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id.*

The evidence at trial clearly showed that the Plaintiff provided reasonable proof of the majority of its claims.  The question, then, is whether the Defendant has met its burden of showing that its refusal to pay *any* portion of the claims, not just the six invoices related to Vincent Ross's freshman year in high school, was reasonable.  It was not.  Defendant has not raised any question as to statutory construction or constitutional law.  As to whether there was any "factual uncertainty," there was no dispute that Mr. Ross was severely disabled, and required round-the-clock home care, regardless of what services were or were not provided while he was in school.  At trial, Mr. Ross's physicians testified that he in fact received excellent care from Health Call providers, as evidenced by the relative stability and improvement in his physical well-being. Defendant has not shown,

---

[2] By contrast, the jury in *Moore* found that only one week of work loss benefits was overdue.

-4-

beyond speculation, that at the time it decided to cease payment, there was a bona fide

factual uncertainty as to the legitimacy of all of HealthCall's claims on behalf of Vincent

Ross. Whatever dispute Defendant had for some portion of the claims did not justify

withholding *all* of the claims, including those that were clearly legitimate. *See Cole v.

D.A.I.I.E.*, 137 Mich.App. 603, 613, 357 N.W.2d 898 (1984) ("The fact that a portion of

the amount due was in dispute did not justify withholding the entire amount due"). Instead,

it appears that State Farm, knowing that not all of the claims were improper, decided to

withhold the entire amount and sort it out later. Defendant thereby assumed the risk that it

would be subject to liability and statutory attorney fees with regard to the undisputed

amounts. *See Blaszczyk v. Liberty Mutual Fire Ins. Co.*, 2008 WL 2038279, *2 (Mich. Ct.

App. 2008), *lv. den.* 482 Mich. 1186 (2008) ("Under § 3142, reasonably supported

portions of a claim become overdue after 30 days, even if other parts of the claim are not

properly supported. Therefore an insurer is required to pay the undisputed portion of a

claim at the risk of it becoming overdue").

Accordingly, I find that Plaintiff is entitled to attorney fees under § 3142.

## 2.   Amount of Attorney Fees

Attorney fees must be reasonable. *Wood v. D.A.I.I.E.*, 413 Mich. 573, 587, 321

N.W.2d 653 (1982). While there is no precise formula for assessing the reasonableness of

attorney fees, the Court in *Wood* considered the following non-exclusive list of factors:

"(1) the professional standing and experience of the attorney; (2) the skill, time and labor

involved; (3) the amount in question and the results achieved; (4) the difficulty of the case;

-5-

(5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Id.* at 588.   This parallels the federal approach in determining attorney fees.  As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis added).  In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987), the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."  Once the lodestar is calculated, the fee may be adjusted in consideration of a number of factors, including "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Disabled Patriots of America, Inc. v. Taylor Inn Enterprises, Inc.*, 424 F.Supp.2d 962, 965-66 (E.D. Mich. 2006), quoting *Doran v. Corte Madera Inn Best Western,* 360 F.Supp.2d 1057, 1061 (N.D. Cal. 2005); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.

-6-

1993).

The calculation of attorney fees is addressed to the trial court's discretion. *Beach v. State Farm Mut. Auto. Ins. Co.*,  216 Mich.App. 612, 627, 550 N.W.2d 580 (1996).  The court is not limited to the above factors, and "need not detail its findings as to each specific factor considered." *Wood v. D.A.I.I.E., supra*, 413 Mich. at 588.

At trial, Plaintiff was represented by three attorneys from Clark Hill.  Lead counsel was Brian Ziff, a partner in the litigation section, who bills at $325 per hour.  Jennifer Green, an associate who has been in practice for three and one-half years, bills at $225 per hour, and Sarah Shaver, a first-year associate, bills at $195 per hour.  Based on statistics from the State Bar of Michigan 2003 Economics of Law Practice Report, billing rates allowed in other cases (*see* Plaintiff's Brief in Support of Motion for Attorney Fees, p. 11), and the Court's own experience, these hourly rates are reasonable.

The Court has reviewed the time-sheets and billing records provided by Plaintiff's counsel.  *See* Exhibit G, Plaintiff's Motion.  Clark Hill came into this case rather late in the game, approximately three months before trial.  (Counsel indicates that he has not billed for time spent "getting up to speed").  However, in addition to the motion practice, including researching and responding to defense motions, this was a very fact-intensive case, with substantial monetary damages being requested and ultimately awarded by the jury.  The risk to counsel was considerable, and, given the Defendant's aggressive pursuit of its affirmative defense of fraud, the possibility of settlement was remote.  In addition, the Court had the opportunity to observe the highly efficient and organized performance of

-7-

counsel at trial, and counsel's high degree of familiarity with the facts and the dynamics of the case.  It was apparent that counsel spent a great deal of time in preparation for trial, commensurate with the time set forth in the billing records.  In view of these factors, as well as the factors set forth in *Wood* and *Disabled Patriots, supra*, I find that both the hours expended by counsel and the total amount claimed in fees ($259,338.23) is reasonable.[3]  I also note that similar attorney fees have been awarded in similar cases. *See,e.g., Blaszczyk, supra* ($285,975 in attorney fees found reasonable in a no-fault case). Further, the claim for costs in the amount of $2,618.23 is reasonable.

Plaintiff's total attorney fees and costs are therefore $261,956.46.  For the reasons set forth in § III, *infra*, Plaintiff, having prevailed on 89% of its claims (approximately $1,066,000 awarded out of approximately $1,200,000 at issue), would be entitled to 89% of the fees and costs claimed, or $233,141.25.  This amount will be offset by Defendant's attorney fees of $19,388 (*see* § III), resulting in net Plaintiff's attorney fees and costs attributable to Clark Hill in the amount of $213,753.25.

The Plaintiff was formerly represented by Christopher Trainor & Associates, who claims a charging lien on the judgment. The total award of attorney fees must include Mr. Trainor's fees and costs, which the Court has calculated at $40,908.87.  *See* Section IV,

---

[3] At page D of amended Exhibit O, counsel estimated $15,000 in fees in defense of Defendant's motion for Rule 11 sanctions.  That motion was denied.  The Court declines to include that amount in the attorney fee award.  Apart from the fact that it appears to be excessive in relation to what would be required in that motion, it also appears to be duplicative of the $70,005.05 claimed for fees incurred from September 24, 2008 through January 21, 2009.  See page D, amended Exhibit O, fn. 4.

*infra*. Again, for the reasons stated in § III, this amount will be apportioned at 89%, such that the portion of the attorney fee award attributable to Mr. Trainor's representation will be $36, 408.89.

This brings the total net Plaintiff's attorney fees and cost to **$250,162.14.**

Accordingly, Plaintiff will be awarded attorney fees and costs in the amount of **$250,162.14.**

### C.    Pre-Judgment Interest

Under Michigan law, a prevailing plaintiff may be awarded pre-judgment interest. M.C.L. § 600.6013(8) provides as follows:

> "(8) Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs. The amount of interest attributable to that part of the money judgment from which attorney fees are paid is retained by the plaintiff, and not paid to the plaintiff's attorney."

Because they serve different purposes, pre-judgment interest and penalty interest are not mutually exclusive, and both may be awarded in a no-fault case. *See Wood v. D.A.I.I.E., supra*, 321 N.W.2d at 662.

Under the statute, pre-judgment interest is calculated on the total amount of the judgment, including "attorney fees and other costs." This would also include any no-fault

-9-

penalty interest awarded under M.C.L. § 500.3142.  Here, the judgment on which pre-judgment interest is calculated is: the jury award of $1,066,159.97, plus penalty interest of $283,715.38, plus net Plaintiff's attorney fees of $250,162.14, for a total base judgment of $1,600,037.49.

In its Amended Exhibit O, Plaintiff calculated the pre-judgment interest, under the statutory formula, at $742,521.04, based on penalty interest of $262,389.38 and attorney fees and costs of $314,343.28.  Adjusting for the modified figures in the preceding paragraph, pre-judgment interest in the amount of **$723,152.27** will be awarded.

### III.    DEFENDANT'S MOTION FOR ATTORNEY FEES [Docket #134]

M.C.L. § 500.3148(2) provides for an award of attorney fees to an insurer who successfully defends against a fraudulent claim:

> "(2) An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney and defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation."

The award or denial of attorney fees to a defendant insurer is addressed to the court's discretion. *Beach v. State Farm Mut. Auto. Ins. Co.*, *supra*  216 Mich.App. at 627.

In the present case, the jury specifically found that six of HealthCall's invoices were fraudulent in nature.  The total dollar value of those six invoices was approximately $134,000, or 11% of the approximately $2,200,000 claimed by HealthCall.  Conversely, the jury awarded Plaintiff 89% of the recovery it sought.

The Defendant acknowledges that there is a dearth of published case law applying §

-10-

500.3148(2) to specific factual scenarios, but, in asking for an award of all of the attorney

fees incurred in defense of this lawsuit, points to the unpublished cases of *Robinson v.*

*Allstate Ins. Co.*, Mich. Ct. App. Docket # 244824 & 245363(5-11-04) and *Stoops v. Farm*

*Bureau Ins. Co.*, Ct. App. Docket #260454 & 261917 (3-23-06).  In those cases, however,

there was an extreme difference between the claims the jury found to be fraudulent and the

claims it found to be legitimate, with the fraudulent claims being significantly greater.

Here, the opposite is true: the claims the jury found to be fraudulent constituted only 11%

of the total, and the Plaintiff prevailed on the vast majority of its claims.  It defies logic to

award the Defendant all of its attorney fees in a case in which the Plaintiff substantially

prevailed.

Still, the statute is clear that a defendant insurer may be entitled to attorney fees for

successfully defending against claims that were "in some respect fraudulent."  The

solution is to apportion Defendant's and Plaintiff's attorney fees in relation to their

respective degrees of success at trial.  Apportionment is particularly workable in this case

because of the jury's clarity as to which invoices were fraudulent and which were not.[4]

The Defendant seeks $176,255 in fees and costs.  As an initial matter, the Court

finds that counsel's hourly rates ($325 for lead counsel and $225 for co-counsel) is

reasonable, and well within the prevailing rates in this area.  In addition, the Court has no

---

[4] In *Hough v. State Farm Ins. Co.*, 2007 WL 2902255 (E.D. Mich. 2007), Judge
Duggan approved apportionment of attorney fees based on the relationship between the
amount recovered versus the amount obtained.

reason to question the legitimacy and accuracy of the total hours claimed to have been expended in defense of this case. Defendant's counsel, no less than Plaintiff's, tried this case in an extremely efficient and skilled manner, and obviously spent considerable time in preparation. In terms of both dispositive and non-dispositive motion work, the docket entries speak for themselves.

Therefore, because the Defendant prevailed in 11% of the total amount claimed, it is entitled to 11% of its claimed attorney fees and costs.[5] Accordingly, Defendant will be awarded **$19,388** in attorney fees and costs.

As a matter of symmetry, as well as fairness, Plaintiff's attorney fees will also be apportioned in relation to its success on 89% of its claims. In § II-B-2, *supra*, total attorney fees and costs for Clark Hill were calculated at $261,956.46; Plaintiff is therefore entitled to 89% of that amount, or $233,141.25.

Finally, the Court finds that the simplest and fairest procedure for awarding Defendant's attorney fees is to offset Plaintiff's fees and costs. This will result in a judgment that more accurately represents the net funds that will go to Plaintiff, and it is upon this net amount that prejudgment interest will be calculated.

## IV.   PRIOR COUNSEL'S LIEN [Docket #141]

Attorney Christopher Trainor, of Christopher Trainor and Associates, previously represented the Plaintiff before they terminated him as counsel. Mr. Trainor has submitted

---

[5] Prevailing parties are also entitled to costs. *See* M.C.R. 2.625; M.C.L. §§ 600.2405, 600.2441, 600.2555, 600.2549, 600.2552.

a written fee agreement with the Plaintiff, under which, in the event the Plaintiff terminates him as counsel, he is entitled to "the amount of attorney time spent multiplied by $400 per hour."  He has also submitted a billing statement in which he claims attorney fees in the amount of $65,400 (163.5 hours x $400) and costs in the amount of $2,317.11, for a total of $68,181.45.

Claiming that Mr. Trainor's billing statement "is nothing more than a heavily padded, retrospective, rough estimate of time expended" on HealthCall's case, *Plaintiff's Reply Brief* [Docket #146], Plaintiff asks this Court to significantly reduce his fees. Plaintiff acknowledges that Mr. Trainor "is entitled to fees on the basis of *quantum meruit*." *Id.*

Again, the cornerstone of any award of attorney fees is reasonableness.  *Wood v. D.A.I.I.E., supra*; *Hensley v. Echerhart, supra*.  Here, the Court is asked to determine whether the number of hours claimed is accurate (and accurately documented), whether the hourly rate of $400 is reasonable, and, consequently, whether the total fee claimed is reasonable.

In *Imwalle v. Reliance Medical Products, Inc.* 515 F.3d 531, 553 (6th Cir. 2008), the Sixth Circuit stated as follows regarding the need for accurate documentation of claimed attorney fees:

> "The key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.' *United Slate*, 732 F.2d at 502 n. 2. Where

-13-

the documentation is inadequate, the district court may reduce the award accordingly. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

\*                                   \*                                   \*

"Courts in this circuit have reduced attorney fees on the basis of insufficient billing descriptions where the attorney did not 'maintain contemporaneous records of his time or the nature of his work,' *Keener v. Dep't of the Army,* 136 F.R.D. 140, 147 (M.D.Tenn. 1991), *aff'd on decision of the district court by Keener v. Dep't of the Army,* No. 91-5442, 1992 WL 34580, 1992 U.S.App. LEXIS 2822 (6th Cir. Feb. 24, 1992), and where billing records 'lumped' together time entries under one total so that it was 'impossible to determine the amount of time spent on each task.' *Cleveland Area Bd. of Realtors,* 965 F.Supp. at 1021."

In this case, counsel has not provided contemporaneous billing records, but rather has submitted a *post hoc* summary of attorney time. Some of the entries aggregate time without any further detail. This makes it difficult for the Court to determine "with a high degree of certainty that such hours were actually and reasonably expended." For example, the last entry notes a total of 15 hours on "various dates" for telephone calls/emails with clients. A block entry for 9/17/07 to 9/28/07 claims 20 hours for "review" of the file and transcripts, with no further specification. An entry for 12/13/07 to 12/18/07 lumps together a motion in limine, legal research, a review of the pleadings and a market survey of Kathleen Wallace, for a total of 12 hours.

Other entries appear to overstate the time claimed. For example, there is a entry for 10/4/07 claiming 2 hours to prepare a motion to exceed a page limit. The motion [Docket #44] is a rather simple, boilerplate affair that does not merit the $800 that Plaintiff is being billed. There is an entry for 10/1-07 to 10/8/07 claiming 45 hours to respond to

Defendant's motion for summary judgment, and another for 10/26/07 to 10/31/07, claiming an additional 21 hours to prepare Plaintiff's own motion for summary judgment. Yet, while there are some differences, the two pleadings are to a large extent identical, with overlapping exhibits.  The differences that do exist cannot account for 21 extra hours of research and writing.

I do not impute bad faith or intentional "padding" to Mr. Trainor, but the inaccuracies that inevitably occur in trying to reconstruct a billing record a year after the fact underscore the importance of  keeping contemporaneous time records.

As to the hourly rate, Mr. Trainor is an experienced litigator, and his claimed rate of $400 per hour, while somewhat high for this market, is not unreasonable.  However, I do question the reasonableness of a more junior associate, Timothy Hartner.  It was Mr. Hartner, not Mr. Trainor, who attended the depositions of Joel Szirtes and Kathleen Wallace and the April 16, 2008 *Daubert* hearing.  In addition, time claimed for client letters (4/24/08 and 5/8/08) is billed at $400 per hour, even though the letters were written by a legal assistant.

Mr. Trainor argues that this Court cannot and should not impose a standard of "reasonableness" on a written fee contract that the parties entered into freely.  However, every attorney fee agreement is subject to Rule 1.5 of the Michigan Rules of Professional Conduct, which provides:

> "**(a)** A lawyer shall not enter into an agreement for, charge, or collect an
> illegal or clearly excessive fee.  A fee is clearly excessive when, after a
> review of the facts, a lawyer of ordinary prudence would be left with a

definite and firm conviction *that the fee is in excess of a reasonable fee*."
(Emphasis added).

The cases on which Mr. Trainor relies are distinguishable. *Rory v. Continental Ins. Co.* 473 Mich. 457, 703 N.W.2d 23 (2005), did not involve a claim of excessive or un reasonable fees, but rather dealt with a contractual provision providing for a shortened period of limitations. *Wistrand v. Bese*, 23 Mich.App. 423, 178 N.W.2d 826 (1970), did not involve a claim of excessive fees, but rather dealt with the construction of an ambiguous fee contract. Moreover, the decision in *Wistrand* predates the 1988 adoption of the Michigan Rules of Professional Conduct.

The Court therefore finds that although Mr. Trainor is entitled to *quantum meruit* based on his prior representation of the Plaintiff, his request for $68,181.45 in fees and costs is excessive and unreasonable, and that amount will be reduced.

Where, as in the present case, there is a voluminous fee application or time sheet, in exercising its discretion in reducing the request, "the district court is not required to set forth an hour-by-hour analysis of the fee request. *See, e.g., Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987); *In re 'Agent Orange' Product Liability Litigation,* 818 F.2d 226, 237-38 (2d Cir.1987) ('no item-by-item accounting of the hours disallowed is necessary or desirable'); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646, 657-58 (7th Cir.1985)." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 -1399 (9th Cir.1992). Rather, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming

-16-

the fat from a fee application." *Id.*, 987 F.2d at 1398 (internal quotation marks omitted).

*See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (holding that "the court

has discretion simply to deduct a reasonable percentage of the number of hours claimed

'as a practical means of trimming fat from a fee application.'") (internal citations omitted);

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 -1204 (10th Cir. 1986) (affirming a

reduction in claimed fees by 77%, the court states, "There is no requirement, either in this

court or elsewhere, that district courts identify and justify each disallowed hour.").

The Court finds that reducing Mr. Trainor's claimed fees and expenses by 40%

would result in a more reasonable and accurate amount.  He is thus entitled to 60% of the

originally claimed amount of $68,181.45, which comes to **$40,908.87**.[6]

## V.   CONCLUSION

Accordingly, under the terms set forth above, Plaintiff's Post-Trial Motion For

Penalty Interest, Attorney Fees, and Prejudgment Interest [Docket #133] is GRANTED.

As modified above, Defendant's Motion for Attorney Fees Pursuant to M.C.L. §

500.3148(2) [Docket #134] is GRANTED.

Under the terms set forth above, Plaintiff's Motion for Clearance or Determination

of Prior Counsel's Lien [Docket #141] is GRANTED.  Prior counsel Christopher Trainor

---

[6] For purposes of computing the statutory attorney fees to be assessed against the
Defendant under M.C.L. § 500.3148(1), Mr. Trainor's fees were apportioned at 89%, as
were Clark Hill's fees.  However, Mr. Trainor's entitlement to *quantum meruit* is a
separate question, and his own claim will not be similarly apportioned. Rather, he will
have a charging lien against the judgment for the entire amount of $40,908.87.

and Associates shall have a charging lien on the amended judgment in this case in the

amount of $40,908.87.

An amended judgment shall enter in Plaintiff's favor, in the amount of

$2,323,189.76.

SO ORDERED.


S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  April 13, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on April 13, 2009.


S/Gina Wilson
Judicial Assistant